## No. 11,303.

### HAVER, ET AL. *v*. MATONOCK.

Decided March 22, 1926.

Action to enjoin diversion of spring water. Judgment for plaintiff.

### *Affirmed.*

1. WATER RIGHTS—*Springs—Priority of Right*. The owner of land upon which is located a spring, the water of which he uses for irrigation and stock purposes, has the first and prior right to its use, it not being tributary to, or forming a part of any natural stream.

*Error to the District Court of Pueblo County, Hon. James A. Park, Judge.*

Mr. W. O. PETERSON, Mr. JOHN H. VOORHEES, for plaintiffs in error.

Mr. SPERRY S. PACKARD, Mr. M. J. GALLIGAN, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff Matonock brought this action to prevent the defendants from taking water from the Matonock spring located upon his lands to which he claimed the prior right. The defendants justified their diversion and attempted use upon the following grounds: (1) That the waters from this spring are a part of a natural stream and that, under the pertinent statute, they have made an appropriation thereof prior and superior to any use of the waters by the plaintiff. (2) That there

is sufficient water in the spring or immediately below
it to meet all domestic, stock and irrigation uses of the
plaintiff in excess of the amount used and appropriated
by the defendants.  (3) That whatever rights plaintiff
may have had in the waters of the spring, if any such
thereto ever existed, were abandoned by him.  (4) That
defendants have appropriated and taken the water
from the spring and have carried and propose here-
after to carry the same in a pipe line, and use the same
for domestic and irrigation purposes on their property
in the town of Rye.

We know of no better way to elucidate the controversy
of law and fact than to reproduce in substance the clear
and explicit statement of his findings by the trial judge,
which were in favor of the plaintiff and against the de-
fendants upon all of the issues both of law and fact
upon which a decree was rendered establishing the su-
perior right to the water to be in the plaintiff, and per-
manently enjoining the defendants from interfering
therewith.  These findings are that the natural spring
arises and is situate upon the plaintiff's premises at the
head of a draw or swale; that the flow of spring water
at its source is about 1/60th of a cubic foot, or 28.8 cubic
inches, or 64/100 statutory inches, per second of time.
Plaintiff and his grantors had utilized this spring for
watering stock for many years, more than twenty, and
for irrigating his land to a certain extent, but there had
been no continuous use of the water for irrigation, but
all the water could be used on his land for such purpose.
From the spring for about the distance of 1¼ miles
down to the Zorn sawmill, there is a little valley or
swale 50 to 300 feet in width, which is the natural out-
let of the spring and also of surface water which may
accumulate in that vicinity.  A large part of this swale
is comparatively level and covered with blue grass and
white clover, and while there is some indication of a
small channel in portions of the swale, there is no
natural flow of water from the spring down to the saw-

mill except in times of freshets or melting snow. The water from the spring is not sufficient to irrigate more than a small garden tract. There is no indication of what would constitute, in the generally accepted sense of the term, a natural stream. There is no definite or visible channel or banks. The water from the ordinary flow of the spring could never reach the Graneros Creek, which is the nearest natural stream in that vicinity, and it would be entirely dissipated and used up in finding its way down through the swale and none of it could ever reach even the Zorn sawmill $1\frac{1}{4}$ miles from its head except in times of freshets, and none of it either by surface flow, percolation or otherwise, would or could ever reach the natural stream, $2\frac{1}{4}$ miles below the spring, or in any appreciable or substantial quantity augment, or contribute to, the volume of water therein. All of the water of the stream is capable of being used upon the plaintiff's land and it has been used for irrigating his land and for stock water purposes for more than twenty years before defendants' alleged rights attached; that under our statute, § 1637, C. L. 1921, p. 581, the plaintiff has a first and prior right to use of the water so far as he desires to use the same as against the defendants or other appropriators; that plaintiff has expressed a desire to make use of all the waters and the defendants have no right to use the same so long as the plaintiff desires to use them and applies them to a beneficial use.

The bare statement of these findings, if there was legal and competent evidence to support them, as there was, fully justified the court in making them and in rendering the decree. It would serve no useful purpose further to specify facts or to discuss the questions of law involved. It may be the evidence shows that if the defendants ever initiated any right to this water, it was as the result of a trespass. But that is not important in view of our conclusion that the district court

could not properly have found otherwise than that the waters of this spring form no part of a natural stream, the Graneros, and that their ordinary flow never could or would reach its channel, either by surface flow or by .percolation, and never in any event except such waters as might, in flood time or freshets, mingle therewith and thus reach the natural stream in passing down the swale.

When the defendants' application for a supersedeas was presented to this court, it was supported and opposed in the briefs of the respective counsel as fully and elaborately as upon the final hearing. We denied the application but the defendants, nevertheless, have prosecuted the case to a final hearing, the result of which serves to convince us, as it did upon the application for supersedeas, that the findings and decree of the disstrict court are right. To avoid misapprehension it should be stated that this is not a case where a senior appropriator of water from a natural stream is seeking to prevent diversion from a tributary by a junior appropriator. Even if it be assumed that the defendants have lawfully taken steps to initiate an appropriation they will not be allowed thereby to divest the prior right of the plaintiff, which he has exercised, to use all of the waters that arise or flow from this spring for his own domestic use and for irrigating his land. The defendants are wrong in supposing that the decision of this court *In re German Ditch & Reservoir Co.*, 56 Colo. 252, 139 Pac. 2, is applicable to the facts of this case. The opinion there conclusively shows that there is but little, if any, similarity between the facts in that case and in the instant case. No other decisions to which our attention has been called afford the slightest ground for upholding the defendants' claims here. In 1 Wiel on Water Rights (3d Ed.), 357, § 336, the author, on the authority of an Oregon case, says that when a spring furnishes a stream of water that rises to the surface, the right of appropriation attaches, but where the admitted quantity is so

insignificant that a surface stream is impossible, when spread over the width of ground involved, the use of the water belongs to the person upon whose land it first arises. It needs no argument to show that the small quantity of less than 30 cubic inches of water per second of time spread over this valley, 50 to 300 feet wide, as it comes from the spring would never reach in any appreciable quantity a natural stream situated 2¼ miles distant. Our statute, moreover, makes it entirely clear under the facts of the case that the prior right to all of this water belongs to the plaintiff. Indeed, the defendants themselves, in their fruitless attempt to disprove a prior appropriation and use by plaintiff, elicited evidence tending to show that in an open ditch such as plaintiff employed, water would not reach his fields over a course 600 feet in length. Yet, in the next breath, and with an assurance that would lay a burden on a credulous parent, they sought to prove that water from the same spring, if allowed to flow naturally, would reach and substantially augment the volume of water in a natural stream two and one-quarter miles below. It is not made clear why the traveling capacity of this spring water in its natural course down the swale is so much greater than it is when coursing along in an artificial channel especially adapted and prepared to facilitate its movement.

The decree is affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.